STATE OF TENNESSEE
IN THE CIRCUIT COURT OF MEIGS COUNTY

CASE NO. *2019 - CV· 21*

SUSAN TUBBS,

**PLEASE SERVE:**
Suzuki Motor of America, Inc.
c/o CT Corporation
300 Montvue Road
Knoxville, TN 37919

                    Plaintiff,

v.

RECREATION UNLIMITED, LLC and
SZUKI MOTOR OF AMERICA, INC.,

                    Defendant.
_____/

**SUMMONS**

THE STATE OF TENNESSEE:

To Each Sheriff of the State:

        YOU ARE COMMANDED to serve this summons, a copy of the complaint or petition in this action on defendant **SUZUKI MOTOR OF AMERICA, INC.**

        Each defendant is required to serve written defenses to the complaint or petition on Alex D Weisberg, plaintiff's attorney, whose address is **5846 SOUTH FLAMINGO ROAD, #290, COOPER CITY, FL 33330**, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

DATED on *June 4, 2019*

                                        _____
                                        As Clerk of the Court
                                        By _____
                                        As Deputy Clerk

ALEX D. WEISBERG
WEISBERG CONSUMER LAW GROUP
ATTORNEYS FOR PLAINTIFF
5846 South Flamingo Road, Ste. 290
Cooper City, FL 33330
(954) 212-2184
(866) 577-0963 fax

*Served Suzuki Motor
of America Inc.
c/o CT
Refused to sign
Debbie Rogers*

SUSAN TUBBS,

    Plaintiff,

    .v.                     Civil Action No. 2019-CV-21

RECREATION UNLIMITED, LLC and
SUZUKI MOTOR OF AMRICA, INC.,

    Defendant.

_____/

## COMPLAINT

NOW COMES Plaintiff, SUSAN TUBBS, by and through her attorneys, WEISBERG CONSUMER LAW GROUP, PA, and for her complaint against Defendants, RECREATION UNLIMITED, LLC and SUZUKI MOTOR OF AMERICA, INC., alleges and affirmatively states as follows:

## PARTIES

1.    Plaintiff, SUSAN TUBBS ("Plaintiff"), is an individual who was at all times relevant hereto residing in the State of Tennessee.

2.    Defendant, RECREATION UNLIMITED, LLC, ("Boat Manufacturer"), is a foreign corporation authorized to do business in the State of Tennessee, County of Meigs, and is engaged in the manufacture, sale, and distribution of boats and related equipment and services. Boat Manufacturer is also in the business of marketing, supplying and selling written warranties to the public at large through a system of authorized dealerships. Boat Manufacturer does business in all counties of the State of Tennessee including Meigs County, and, upon information and belief, maintains offices in the County of Meigs, State of Tennessee.

**FILED**
MEIGS COUNTY CIRCUIT COURT
DATE 5·31·19

1

3.     Defendant, SUZUKI MOTOR OF AMERICA, INC., ("Motor Manufacturer"), is a foreign corporation authorized to do business in the State of Tennessee, County of Meigs, and is engaged in the manufacture, sale, and distribution of boat motors and related equipment and services. Motor Manufacturer is also in the business of marketing, supplying and selling written warranties to the public at large through a system of authorized dealerships. Motor Manufacturer does business in all counties of the State of Tennessee including Meigs County, and, upon information and belief, maintains offices in the County of Meigs, State of Tennessee.

## JURISDICTION

4.     This Court has jurisdiction pursuant to Tenn. Code Ann. § 16-10.

## BACKGROUND

5.     On or about July 26, 2018, Plaintiff purchased a 2018 Key Largo 236WI ("236WI"), manufactured and distributed by Boat Manufacturer, Serial No. REC24597H718, for valuable consideration (See copy of Plaintiff's Purchase Agreement, attached hereto as Exhibit "A"). The motor in Plaintiff's 236WI, with serial number 22503F-810313, was manufactured by Motor Manufacturer.

6.     The price of the 236WI, including registration charges, document fees and sales tax, totaled at least $58,245.00.

7.     Plaintiff avers that as a result of the ineffective repair attempts made by Boat Manufacturer and Motor Manufacturer (commonly referred to as "Manufacturers"), through their authorized dealership network, the 236WI cannot be utilized for personal, family and household use as intended by Plaintiff at the time of acquisition.

2

8. In consideration for the purchase of the 236WI, Manufacturers issued and supplied to Plaintiff their written warranties, which included various coverages which are fully outlined in the Manufacturers' Warranty documentation. (Motor Manufacturer's warranty is attached hereto as Exhibit "B"; Plaintiff does not currently have a copy of Boat Manufacturer's written warranty but will obtain a copy through discovery).

9. On or about July 26, 2018, Plaintiff took possession of the 236WI and shortly thereafter experienced the various defects and nonconformities listed below that substantially impair its value.

10. The defects described below violate Manufacturers' warranties issued to Plaintiff, which consequently failed of their essential purpose.

11. Plaintiff delivered the 236WI to Manufacturers, through their authorized dealership network, on numerous occasions.

12. Plaintiff avers that the 236WI has been subject to repair at least three (3) times for the same defects, and that the defects remain uncorrected.

13. Plaintiff further avers that the 236WI has been out of service for more than six (6) months as a result of its defects.

14. Plaintiff brought the 236WI to an authorized service dealer of Manufacturers for various defects and nonconformities, including but not limited to:

    a. Defective motor;

    b. Defective props;

    c. Defective hull;

    d. Defective fuel tank;

    e. Defective gel coat;

    f. Defective front hatch;

    g. Defective brake line;

3

| h. | Defective prop housing; |
|---|---|
| i. | Defective GPS; |
| j. | Defective Bimini canvas; |
| k. | Defective seats; |
| l. | Defective storage lid; and |
| m. | Any additional complaints made by the Plaintiff, whether or not they are contained in Manufacturers' records or on any repair orders. |

15.     Plaintiff provided Manufacturers, through their authorized dealership network, sufficient opportunities to repair the 236WI.

16.     After a reasonable number of attempts and/or a reasonable opportunity to cure the defects in Plaintiff's 236WI, the Manufacturers were unable and/or have failed to repair the defects, as provided in Manufacturers' warranty.

17.     Manufacturers refused and/or failed to adequately repair the defects in Plaintiff's 236WI.

18.     Plaintiff justifiably lost confidence in the 236WI's safety and reliability, and said defects and nonconformities have substantially impaired the value of the 236WI to Plaintiff.

19.     Said defects could not reasonably have been discovered by Plaintiff prior to Plaintiff's acceptance of the 236WI.

20.     As a result of these defects, Plaintiff revoked her acceptance of the 236WI in writing. (See copy of Notice letters, attached hereto as Exhibit "C").

21.     At the time of revocation, the 236WI was in substantially the same condition as at delivery except for damage caused by its own defects and ordinary wear and tear.

22.     Boat Manufacturer refused Plaintiff's demand for revocation and refused to provide Plaintiff with the remedies to which Plaintiff is entitled upon revocation.

4

23. The defects described above violate the implied warranty of merchantability, as well as Manufacturers' warranties issued to Plaintiff, which consequently failed of their essential purpose.

24. The 236WI remains in a defective and unmerchantable condition, and continues to exhibit the above mentioned defects.

## COUNT I
## BREACH OF WRITTEN WARRANTY
## PURSUANT TO THE MAGNUSON-MOSS WARRANTY ACT
## BOAT MANUFACTURER

25. Plaintiff re-alleges and incorporates by reference all of the preceding paragraphs as though fully set forth herein.

26. Plaintiff is a purchaser of a consumer product who received the 236WI during the duration of a written warranty period applicable to the 236WI and who is entitled by the terms of the written warranty to enforce against Boat Manufacturer the obligations of said warranty.

27. Boat Manufacturer is a company engaged in the business of making a consumer product directly available to Plaintiff.

28. The Magnuson-Moss Warranty Act, Chapter 15 U.S.C.A., Section 2301, *et. seq.* ("Warranty Act") is applicable to Plaintiff's Complaint in that the 236WI was manufactured and sold after July 4, 1975, and costs in excess of ten dollars ($10.00).

29. Plaintiff's purchase of the 236WI was accompanied by a written factory warranty for any defects in material or workmanship, comprising an undertaking in writing in connection with the purchase of the 236WI to repair or replace defective parts, or take other remedial action free of charge to Plaintiff with respect to the 236WI in the event that the 236WI failed to meet the specifications set forth in Boat Manufacturer's warranty.

5

30.     Boat Manufacturer's warranty was the basis of the bargain of the contract between the Plaintiff and Boat Manufacturer for the sale of the 236WI to Plaintiff.

31.     Said purchase of Plaintiff's 236WI was induced by, and Plaintiff relied upon, Boat Manufacturer's written warranty.

32.     Plaintiff has met all of her obligations and preconditions as provided in the written warranties.

33.     Boat Manufacturer breached its express warranty pursuant to the Magnuson Moss Warranty Act in that it failed to repair the defects in Plaintiff's boat within a reasonable number of repair attempts and/or a reasonable amount of time.

34.     As a direct and proximate result of Boat Manufacturer's failure to comply with its written warranty, Plaintiff has suffered damages and, in accordance with 15 U.S.C. §2310(d)(1), Plaintiff is entitled to bring suit for such damages and other legal and equitable relief.

35.     Plaintiff avers that upon successfully prevailing upon the Magnuson-Moss Warranty Act claim herein, all attorneys' fees are recoverable and are demanded against Manufacturer.

WHEREFORE, Plaintiff prays for judgment against Boat Manufacturer as follows:

a.     Diminution in value of the boat and all incidental and consequential damages incurred;
b.     Reasonable cost of repair damages under Tenn. Code 55-24-103;
c.     All reasonable attorneys' fees, witness fees and all court costs and other fees incurred; and
d.     Such other and further relief that the Court deems just and appropriate.

## COUNT II
## BREACH OF IMPLIED WARRANTY
## PURSUANT TO THE MAGNUSON-MOSS WARRANTY ACT
## BOAT MANUFACTURER

6

36.     Plaintiff re-alleges and incorporates by reference as though fully set forth herein, paragraphs 1-24 of this complaint.

37.     The 236WI purchased by Plaintiff was subject to an implied warranty of merchantability as defined in 15 U.S.C. 2301(7) running from the Boat Manufacturer to the intended consumer, Plaintiff herein.

38.     Boat Manufacturer is a supplier of consumer goods as a person engaged in the business of making a consumer product directly available to Plaintiff.

39.     Boat Manufacturer is prohibited from disclaiming or modifying any implied warranty when making a written warranty to the consumer or when Boat Manufacturer has entered into a contract in writing within ninety (90) days from the date of purchase to perform services relating to the maintenance or repair of a boat.

40.     Boat Manufacturer is in contractual privity with Plaintiff based on the issuance of its written warranty and its contacts with Plaintiff.

41.     Pursuant to 15 U.S.C. 2308, Plaintiff's 236WI was impliedly warranted to be substantially free of defects in both material and workmanship, and thereby fit for the ordinary purpose for which the 236WI was intended.

42.     The 236WI was warranted to pass without objection in the trade under the contract description, and was required to conform to the descriptions of the 236WI contained in the contracts and labels.

43.     The above described defects present in the 236WI render the 236WI unmerchantable and thereby not fit for the ordinary and essential purpose for which the 236WI was intended and as represented by Boat Manufacturer.

7

44.     As a result of the breaches of implied warranty by Boat Manufacturer, Plaintiff is without the reasonable value of the 236WI.

45.     As a result of the breaches of implied warranty by Boat Manufacturer, Plaintiff has suffered and continues to suffer various damages.

WHEREFORE, Plaintiff prays for judgment against Boat Manufacturer as follows:

    a.    Diminution in value of the boat and all incidental and consequential damages incurred;

    b.    Reasonable cost of repair damages under Tenn. Code 55-24-103;

    c.    All reasonable attorneys' fees, witness fees and all court costs and other fees incurred; and

    d.    Such other and further relief that the Court deems just and appropriate.

## COUNT III
## REVOCATION OF ACCEPTANCE PURSUANT TO SECTION 2310(d)
## OF THE MAGNUSON-MOSS WARRANTY ACT
## BOAT MANUFACTURER

46.     Plaintiff re-alleges and incorporates by reference as though fully set forth herein, paragraphs 1-24 of this complaint.

47.     Boat Manufacturer's tender of the 236WI was substantially impaired to Plaintiff.

48.     The value of Plaintiff's 236WI was substantially impaired due to its defects and nonconformities.

49.     Boat Manufacturer's tender of the 236WI, which was substantially impaired to Plaintiff, constitutes a violation of 15 U.S.C. §2310(d).

WHEREFORE, Plaintiff prays for judgment against Boat Manufacturer as follows:

    a.    Return of all monies paid, satisfaction of all liens, and all incidental and consequential damages incurred;

    b.    All reasonable attorneys' fees, witness fees and all court costs and other fees incurred; and

    c.    Such other and further relief that the Court deems just and appropriate.

8

**COUNT IV**
**BREACH OF WRITTEN WARRANTY**
**PURSUANT TO THE MAGNUSON-MOSS WARRANTY ACT**
**MOTOR MANUFACTURER**

50.     Plaintiff re-alleges and incorporates by reference as though fully set forth herein, paragraphs 1-24 of this complaint.

51.     Plaintiff is a purchaser of a consumer product who received the boat motor and related components during the duration of a written warranty period applicable to the boat motor and related components and who is entitled by the terms of the written warranty to enforce against Motor Manufacturer the obligations of said warranty.

52.     Motor Manufacturer is a company engaged in the business of making a consumer product directly available to Plaintiff.

53.     The Magnuson-Moss Warranty Act, Chapter 15 U.S.C.A., Section 2301, *et. seq.* ("Warranty Act") is applicable to Plaintiff's Complaint in that the boat motor and related components were manufactured and sold after July 4, 1975, and costs in excess of ten dollars ($10.00).

54.     Plaintiff's purchase of the boat motor and related components was accompanied by a written factory warranty for any defects in material or workmanship, comprising an undertaking in writing in connection with the purchase of the boat motor and related components to repair or replace defective parts, or take other remedial action free of charge to Plaintiff with respect to the boat motor and related components in the event that they failed to meet the specifications set forth in Motor Manufacturer's warranty.

55.     Motor Manufacturer's warranty was the basis of the bargain of the contract between the Plaintiff and Motor Manufacturer for the sale of the boat motor and related components to Plaintiff.

9

56.    Said purchase of Plaintiff's boat motor and related components was induced by, and Plaintiff relied upon, Motor Manufacturer's written warranty.

57.    Plaintiff has met all of her obligations and preconditions as provided in the written warranties.

58.    Motor Manufacturer breached its express warranty pursuant to the Magnuson Moss Warranty Act in that it failed to repair the defects in Plaintiff's boat motor and related components within a reasonable number of repair attempts and/or a reasonable amount of time.

59.    As a direct and proximate result of Motor Manufacturer's failure to comply with its written warranty, Plaintiff has suffered damages and, in accordance with 15 U.S.C. §2310(d)(1), Plaintiff is entitled to bring suit for such damages and other legal and equitable relief.

60.    Plaintiff avers that upon successfully prevailing upon the Magnuson-Moss Warranty Act claim herein, all attorneys' fees are recoverable and are demanded against Manufacturer.

WHEREFORE, Plaintiff prays for judgment against Motor Manufacturer as follows:

a.    Diminution in value of the boat motor and related components and all incidental and consequential damages incurred;
b.    Reasonable cost of repair damages under Tenn. Code 55-24-103;
c.    All reasonable attorneys' fees, witness fees and all court costs and other fees incurred; and
d.    Such other and further relief that the Court deems just and appropriate.

### COUNT V
### BREACH OF IMPLIED WARRANTY
### PURSUANT TO THE MAGNUSON-MOSS WARRANTY ACT
### MOTOR MANUFACTURER

61.    Plaintiff re-alleges and incorporates by reference as though fully set forth herein, paragraphs 1-24 of this complaint.

10

62. The boat motor and related components purchased by Plaintiff was subject to an implied warranty of merchantability as defined in 15 U.S.C. 2301(7) running from the Motor Manufacturer to the intended consumer, Plaintiff herein.

63. Motor Manufacturer is a supplier of consumer goods as a person engaged in the business of making a consumer product directly available to Plaintiff.

64. Motor Manufacturer is prohibited from disclaiming or modifying any implied warranty when making a written warranty to the consumer or when Motor Manufacturer has entered into a contract in writing within ninety (90) days from the date of purchase to perform services relating to the maintenance or repair of a boat motor and related components.

65. Motor Manufacturer is in contractual privity with Plaintiff based on the issuance of its written warranty and its contacts with Plaintiff.

66. Pursuant to 15 U.S.C. 2308, Plaintiff's boat motor and related components was impliedly warranted to be substantially free of defects in both material and workmanship, and thereby fit for the ordinary purpose for which the boat motor and related components was intended.

67. The boat motor and related components was warranted to pass without objection in the trade under the contract description, and was required to conform to the descriptions of the boat motor and related components contained in the contracts and labels.

68. The above described defects present in the boat motor and related components render it unmerchantable and thereby not fit for the ordinary and essential purpose for which the boat motor and related components was intended and as represented by Motor Manufacturer.

69. As a result of the breaches of implied warranty by Motor Manufacturer, Plaintiff is without the reasonable value of the boat motor and related components.

11

70.     As a result of the breaches of implied warranty by Motor Manufacturer, Plaintiff

has suffered and continues to suffer various damages.

WHEREFORE, Plaintiff prays for judgment against Motor Manufacturer as follows:

a.   Diminution in value of the boat motor and related components and
     all incidental and consequential damages incurred;
b.   Reasonable cost of repair damages under Tenn. Code 55-24-103;
c.   All reasonable attorneys' fees, witness fees and all court costs and
     other    fees incurred; and
d.   Such other and further relief that the Court deems just and
     appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated: May 14, 2019


Respectfully submitted,

**Susan Tubbs**

By: _____
Paul K. Guibao
Attorney for Plaintiff
Weisberg Consumer Law Group
242 Poplar Ave.
Memphis, TN 38103
Telephone: (888) 565 3666
Facsimile: (866) 577 0963
Email: PGuibao@afclaw.com
TN Bar# - 020467


Correspondence address:
Weisberg Consumer Law Group
5846 S. Flamingo Road, #290
Cooper City, FL 33330

12

# EXHIBIT "A"



**Boat N RV**
*Making Boating & Camping Fun!*

Boat-N-RV Supercenter
2475 Westel Road
Rockwood, TN 37854

Ph: (865) 354-2140
Fx: (865) 354-4371


**FACTORY DIRECT** MARINE & RV
An Authorized Sales and Service Location

| BUYER(S): SUSAN TUBBS | SALESPERSON: TRAVIS DAVIDSON | DATE: 7/26/2018 |
|---|---|---|
| STREET: 2077 CHARLES RD | HOME: (716) 489-7706 | BUSINESS: |
| CITY: DECATUR | ST: TN  ZIP: 37322 | STOCK NO. G3090 |

## MARINE PURCHASE AND SALE AGREEMENT

I, THE BUYER, HEREBY ORDER AND AGREE TO PURCHASE FROM YOU, ON THE TERMS CONTAINED ON **BOTH** PAGES OF THIS AGREEMENT, THE FOLLOWING VESSEL:

| | Year | Model & Size | Serial No. | New/Used | $ |
|---|---|---|---|---|---|
| Make of Boat **KEY LARGO** | 2018 | 236WI 102IN 23FT | REC24597H718 | New ☒ Used ☐ | 47995.00 |
| Make of Motor **SUZUKI** | 2018 | DF225TX | 22503F-810313 | New ☒ Used ☐ | N/A |
| Make of Trailer **WARLOCK** | 2018 | 230G | 1Z9R23OG4JS076094 | New ☒ Used ☐ | N/A |

INSURANCE AGAINST LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE TO OTHERS IS NOT INCLUDED IN THIS TRANSACTION. IT IS MUTUALLY UNDERSTOOD THAT THIS AGREEMENT IS SUBJECT TO NECESSARY CORRECTIONS AND ADJUSTMENTS CONCERNING CHANGES IN NET PAY OFF ON TRADE-IN TO BE MADE AT THE TIME OF SETTLEMENT.

### THE PRICE

| | | |
|---|---|---|
| Package Price | (+) | 47995.00 |

| FREIGHT, PREP, OPTIONS, AND ACCESSORIES | | | |
|---|---|---|---|
| | | (+) | N/A |
| FREIGHT | 1495.00 | (+) | N/A |
| PREP | 895.00 | Options/Accessories (+) | 10250.00 |
| TRAILER | N/A | | N/A |
| Upgrade to 225hp | 7860.00 | | N/A |
| SEA FOAM/BLACK HULLSIDE | N/A | | N/A |
| HIGH BOW RAILS | N/A | | N/A |
| CANVAS TOP | N/A | | N/A |
| CUSHION PACKAGE | N/A | | N/A |
| STEREO WITH 2 SPEAKERS | N/A | | N/A |
| | | | N/A |
| Options/Accessories Total | 10250.00 | TOTAL | 58245.00 |

### TRADE IN(S)
☐ IF THIS BOX IS CHECKED, THE TRANSACTION INCLUDES MORE THAN 2 TRADE INS.

| DESCRIPTION OF TRADE IN #1 | | LESS TRADE CREDIT #1 (-) | 5500.00 |
|---|---|---|---|
| Yr. 1998  Make SEA CHASER  VIN | | LESS TRADE CREDIT #2 (-) | 5500.00 |
| Lienholder: Est. Owed ($265.00) | | | N/A |
| DESCRIPTION OF TRADE IN #2 | | | N/A |
| Yr. 2006  Make HOLIDAY  VIN | | LESS RETAIL DISCOUNT (IF ANY) (-) | 1600.00 |
| Lienholder: M&t bank  Est. Owed $ 8000.00 | | CASH PRICE (+) | 45645.00 |

If You cancel this Purchase Agreement or otherwise refuse to take delivery of the Vehicle identified below, unless otherwise prohibited by law, you agree that you shall tender (or Dealer may retain) liquidated damages in the amount of $ 9500.00 or adhere to the decision of the tribunal identified on Page 2 of this Agreement.

Buyer's Signature _____

### TAXES AND OTHER FEES

| | |
|---|---|
| SALES TAX | 4080.80 |
| DOC FEE | 395.00 |
| INSPECTION FEE | N/A |
| REGISTRATION FEE | N/A |
| TOTAL CASH PRICE | 50120.80 |
| | N/A |
| LESS DEPOSIT | 3235.00 |
| PLUS BALANCE ON TRADE | 7735.00 |
| CASH ON DELIVERY | N/A |
| AMOUNT FINANCED | 54620.80 |

☒ **FACTORY WARRANTY ONLY:** THE MANUFACTURER'S WARRANTY IS THE ONLY WARRANTY WHICH ACCOMPANIES THE SALE OF THIS VEHICLE. SELLER NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THIS SALE. PLEASE CONSULT THE ADDITIONAL DISCLAIMERS ON PAGE 2.

☐ **AS-IS:** THIS VEHICLE IS SOLD "AS IS" WITHOUT ANY WARRANTY EITHER EXPRESS OR IMPLIED. THE BUYER WILL BEAR THE ENTIRE EXPENSE OF REPLACING OR CORRECTING ANY DEFECT(S) THAT PRESENTLY EXISTS OR THAT MAY HEREAFTER APPEAR IN THE VEHICLE. PLEASE CONSULT THE ADDITIONAL DISCLAIMERS ON PAGE 2.

**NOTICE:** THERE ARE IMPORTANT TERMS AND CONDITIONS ON **PAGE 2** OF THIS AGREEMENT, INCLUDING A PROVISION WHICH REQUIRES CERTAIN DISPUTES BETWEEN BUYER(S) AND SELLER BE RESOLVED THROUGH BINDING ARBITRATION. SIGN BELOW ONLY AFTER YOU HAVE RECEIVED AND REVIEWED BOTH PAGES.

| | | |
|---|---|---|
| Buyer's Signature: | Date: 7/26/2018 | THE AMOUNTS INDICATED ON THIS PURCHASE AGREEMENT FOR REGISTRATION, TAXES, AND TITLE FEES ARE ESTIMATES. IN SOME INSTANCES, THEY MAY EXCEED THE ACTUAL FEES DUE THE COMMISSIONER OF MOTOR VEHICLES OR OTHER GOVERNMENTAL AUTHORITY. DEALER WILL AUTOMATICALLY, AND WITHIN 60 DAYS OF SECURING SUCH REGISTRATION AND TITLE, REFUND ANY AMOUNT OVERPAID FOR SUCH FEES. (TN Rev. 2017-07) |
| Co-Buyer's Signature: | Date: | |
| Seller Approved By: | Date: 7/26/2018 | |

**EXHIBIT "B"**



Welcome, Stacy
Edit My Profile | Logout

**Master Inquiry**

04/05/2019  07:44:56 AM    Dealership: BOAT-N-RV SUPERCENTER    2475 WESTEL RD   ROCKWOOD, TN 37854-6910

Prefix Serial #
Engine Plate Number  22503F  -810313  (Search)

**Motor Information**

| | |
|---|---|
| Control No:502531217 | Color:NEBULAR BLACK |
| Serial No:810313 | Status:Registered |
| Model No:DF225TX2 | Report Date:Jan 2, 2019 |
| Emissions:ALL | Plate No:22503F -810313 |
| Selling Dealership:BOAT-N-RV SUPERCENTER | Manufacture Year/Month:2018/06 |

**Owner Information**

Owner           Update Owner

| | | | |
|---|---|---|---|
| Name:TUBBS, SUSAN | | | |
| Address:2077 CHARLES RD | | City:DECATUR | |
| Phone: | | State:TN | |
| | | Zip:37322 | |
| E-Mail: | | | |

**Warranty Information .**

| | Hours | Sold Date | Expiration Date | Contract Number |
|---|---|---|---|---|
| Warranty, 0 | | Jul 26, 2018 | Jul 26, 2021 | |
| SEP 0 | | Jul 26, 2018 | Jul 25, 2024 | MPE1190229 |

1 of 1



# LIMITED WARRANTY



**Applies to 2001 and Later
Four-Stroke Models**

# TABLE OF CONTENTS

Outboard Motor Limited Warranty .......................................... 1
What Is Covered By This Warranty .......................................... 1
Warranty Coverage Periods .......................................... 1
Your Warranty Begins .......................................... 2
Dealer Responsibilities .......................................... 2
Warranty Exclusions .......................................... 2
Situations Not Covered .......................................... 2
Normal Wear and Deterioration .......................................... 4
Incidental or Consequential Damages and Expenses ............... 4
Warranty Transfer Limitations .......................................... 4
Your Responsibilities .......................................... 5
Warranty Repairs .......................................... 5
Special Assistance .......................................... 5
Emission Control System Limited Warranty .......................................... 7
Emission Control System Warranty Period .......................................... 8
Emission Control System - Parts covered .......................................... 8
Emission Control System - What is not covered .......................................... 9
Emission Control System
- Your Warranty Responsibilities .......................................... 10
Emission Control System
- Obtaining Warranty Service .......................................... 11
Emission Control System - Maintenance & Repairs .......................................... 11
California Emission Control System Limited Warranty .......................................... 12
California Emission Control System - Summary .......................................... 13
California Emission Control System - Warranty Period .......................................... 14
California Emission Control System - Covered Parts .......................................... 14
California Emission Control System
- What Is Not Covered .......................................... 16
California Emission Control System
- Maintenance & Repairs .......................................... 17
Service Record .......................................... 18
Motor & Dealer Record .......................................... 19

SUZUKI MOTOR OF AMERICA, INC.
MARINE DIVISION
# FOUR-STROKE OUTBOARD
# LIMITED WARRANTY
# 2001 AND LATER

**WHAT IS COVERED BY THIS WARRANTY**
Suzuki Motor of America, Inc. provides a limited warranty which covers each new
Suzuki Four-Stroke Outboard Motor imported and distributed by Suzuki Motor
of America, Inc. Needed repairs to correct defects in material and workman-
ship during the manufacture of the outboard will be made at no charge for parts
and labor. The Suzuki Limited Warranty will be in effect if the outboard motor
was properly installed and serviced by an Authorized Suzuki Motor of America
Outboard Dealer within the continental United States, Alaska, Bahamas, or Turks
and Caicos Islands.

**WARRANTY COVERAGE PERIODS**
**FOR 2001 THROUGH 2008 FOUR-STROKE MODEL OUTBOARDS**
☐ *Pleasure Use* – The warranty period is 36 months.
☐ *Commercial Use* – The warranty period is 12 months.
   If your boat has commercial tags, either prior to or following the date of
   sale, the motor will be considered in commercial use. Also, commercial use
   includes, but is not limited to, law enforcement or marine patrol.
☐ *Rental use* – The warranty period is 12 months.
☐ *Demonstrator* – The warranty period begins on the date the outboard was
   first used by the dealer as a demonstrator. You will receive the remaining
   warranty coverage when the outboard is sold at retail for pleasure use only.
☐ *Miscellaneous Sales* – Outboard motors which have been sold at auction or
   titled as salvaged, repossessed, rebuilt, junked, flood damaged, fire/smoke
   damaged, dismantled or other similar occurrences are not covered by the
   Suzuki Limited Warranty.

**FOR 2009 AND LATER FOUR-STROKE MODEL OUTBOARDS**
☐ *Pleasure Use* – The warranty period is 36 months.
☐ *Governmental Agency Use* – The warranty period is 36 months. Suzuki
   four-stroke outboard motors purchased by a United States Federal, State
   or Local Governmental agency and registered for govern- mental use in the
   United States.
☐ *Commercial Use* – The warranty period is 12 months.
   If your boat has commercial tags, either prior to or following the date of sale,
   the motor will be considered in commercial use.

1

- ❑ *Rental Use* – The warranty period is 12 months.
- ❑ *Demonstrator* – The warranty period begins on the date the outboard was first used by the dealer as a demonstrator. You will receive the remaining warranty coverage when the outboard is sold at retail for pleasure use only.
- ❑ *Miscellaneous Sales* – Outboard motors which have been sold at auction or titled as salvaged, repossessed, rebuilt, junked, flood damaged, fire/smoke damaged, dismantled or other similar occurrences are not covered by the Suzuki Limited Warranty.

## YOUR WARRANTY BEGINS

All warranty periods begin on the date the motor is first delivered to the customer or first put into dealer service, such as a dealer demonstrator — whichever comes first.

## DEALER RESPONSIBILITIES

Any Authorized Suzuki Outboard Dealer will perform warranty repairs to your outboard.

The Authorized Suzuki Outboard Dealer from whom you purchased your out- board is required to provide you with a signed copy of the Certificate of Pre-Delivery. This form will complete your warranty records and should be attached to your warranty policy for future reference. The Certificate of Pre- Delivery outlines the steps your dealer has taken to fulfill its pre-delivery responsibility to properly install and service your new Suzuki Outboard.

In certain circumstances if warranty repairs are needed you may be asked to provide proof of purchase such as the original copy of the bill of sale.

## WARRANTY EXCLUSIONS IN THE SECOND YEAR AND THIRD YEAR OF THE THREE YEAR PLEASURE USE WARRANTY COVERAGE PERIOD

- ❑ Gauges and meters, fuel tank, remote control boxes and external wire harnesses, hoses and all rubber components (except engine oil seals).

## SITUATIONS NOT COVERED BY THE SUZUKI LIMITED WARRANTY

The Suzuki Limited Warranty does not cover the following situations. Repair of these items is your responsibility.

- ❑ Accidents, such as striking submerged objects or running aground.
- ❑ Misapplication of the outboard motor to the vessel, such as under-powering commercial vessels, overpowering or installing an incorrect shaft length motor.
- ❑ Abusive operation of the motor, such as operating the engine at continuous 100% throttle setting, or with insufficient warm up or insufficient cooling water supply.
- ❑ Piston seizure not caused by a manufacturing defect in either materials or workmanship.

2

- ☐ Competition or racing usage.
- ☐ Improperly performed repairs or maintenance.
- ☐ Improper selection of octane rating or poor fuel quality such as water contamination or abnormal concentrations of alcohol or other substances.
- ☐ Improper selection of lubricants such as low quality oil, gelled oil or non-marine grade lubricants and greases.
- ☐ Normal wear and deterioration during everyday, intended use of the motor.
- ☐ Normal operational noises and/or normal vibrations not caused by a defect in factory materials or workmanship.
- ☐ Differences between like motors such as power, acceleration, top speed, fuel consumption, vibration or noises due to normal production variations.
- ☐ Normal cosmetic deterioration, such as fading of paint color, paint peeling, decal fading or peeling that are caused by improper storage, lack of maintenance or harsh climate conditions.
- ☐ Customer applied chemical treatments such as specialized waxes, water repellent protective engine sprays and oil additives.
- ☐ Environmental damage such as exposure to sun, rain, freezing, tree sap, bird droppings, hail, road salt, acid rain, ozone and other natural conditions.
- ☐ Corrosion damage caused by a lack of proper use, maintenance, storage or exposure to salt water, normal galvanic action or electrolysis.
- ☐ Underwater submersion or ingestion of water either through the intake or exhaust system such as, but not limited to, an improperly mounted bracket or being subjected to stormy seas or mishandling of the vessel.
- ☐ Alteration, modification, tampering with the original factory settings, vandalism, fire, accident, theft, and collision.
- ☐ Tilt lock mechanism, if damage was caused by trailering or raised auxiliary motor position.
- ☐ Use of non-Suzuki parts and accessories which are directly responsible for the failure of a covered component.
- ☐ Additional labor to remove and reinstall non-factory installed parts or accessories in order to perform warranty repairs.
- ☐ Any other use of the motor which is unreasonable or abnormal under the circumstances.

3

**NORMAL WEAR AND DETERIORATION**

Engine components which wear out at expected intervals during the regular service span of an engine do not constitute a defect, but are merely a result of the engine's normal life span. This normal wear is not covered by the warranty.

During routine operation of the outboard motor, certain components will experience normal wear and deterioration, including but not limited to, the following: filters, fuses, spark plugs, propellers, propeller bushings, zinc anodes, timing belts, water pump impellers, starter motor brushes, and trim motor brushes.

Normal maintenance parts and labor needed to maintain your Suzuki outboard motor and the normal replacement of parts due to normal wear and deterioration are your responsibility. The warranty does not provide coverage for these items. *Some examples are:*

- ☐ First required service and any periodic maintenance
- ☐ Lower unit gear oil changes
- ☐ Filters and spark plugs
- ☐ Water pump impellers
- ☐ Valve adjustments

**INCIDENTAL OR CONSEQUENTIAL DAMAGES AND EXPENSES**

This Suzuki Limited Warranty does not cover any incidental or consequential damages whether foreseeable or not, including but not limited to, the following:

- ☐ The expense of returning the outboard for warranty repairs
- ☐ Towing charges
- ☐ "Haul out" fees
- ☐ Loss of use
- ☐ Inconvenience
- ☐ Lost business revenue or profits
- ☐ Alternate motor or boat rentals
- ☐ Overnight expenses, telephone calls, meal expenses, lodging expenses, etc.

**SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES SO THE ABOVE LIMITATION OR EXCLUSION MAY NOT APPLY TO YOU.**

**OWNERSHIP CHANGE**

The Limited Warranty period will apply to the outboard motor, regardless of ownership changes, beginning at the original date of purchase, and ending, without interruption, at the date of expiration of the applicable Limited Warranty Policy.

While the applicable warranty coverage will follow the motor, and is unaffected by a change of ownership, Suzuki Motor of America suggests that all subsequent owners of Suzuki products provide their contact information to Suzuki as soon as possible after taking ownership of the product. The new owners contact information will allow Suzuki to notify the new owner of the motor of any future safety recall or product updates.

4

## YOUR RESPONSIBILITIES

You must operate and maintain your Suzuki Outboard in a normal manner as described in the Owner's Manual. It is your responsibility to maintain your Suzuki Outboard motor by performing all of the necessary scheduled periodic maintenance or additional maintenance which might be required due to your operational use. It is also your responsibility to maintain the necessary records, invoices, bills and other receipts to prove where certain repairs were per- formed and that all necessary maintenance work was completed using Genuine Suzuki Parts and recommended lubricants wherever applicable. Warranty decisions may be based upon our review of applicable records and receipts.

## WHERE TO SEEK WARRANTY REPAIRS

All warranty repairs must be made by an authorized Suzuki Motor of America Outboard Dealer within the continental United States, Alaska, Bahamas, or Turks and Caicos Islands. Your dealer will perform the necessary repairs or adjustments within a reasonable amount of time and provide you with a copy of the re- pair order for your records. Suzuki Motor of America will, at its option, repair your outboard motor with either new, reconditioned or remanufactured component parts. Any parts replaced under the coverage of this limited warranty become the property of Suzuki Motor of America. If you operate your outboard outside of the areas listed above and require warranty assistance contact Suzuki Motor of America Customer Relations at 714-572-1490.

## SCHEDULING WARRANTY REPAIRS

Should a defect arise during the warranty period, call your Authorized Suzuki Outboard Dealer of choice and notify them of the problem. We recommend that you do so within 24 hours. Your dealer may then provide special instructions to avoid further deterioration or additional problems from occurring. It is your responsibility to return your outboard motor to your servicing dealer for repairs.

Your Authorized Suzuki Dealer will make every effort to complete your warranty repairs in a timely manner. However, during the boating season and at some other times of the year, additional time may be required for the completion of the necessary repairs to the motor.

We always recommend that you return to your selling dealer for warranty repairs and service whenever possible. The dealer where you purchased your outboard has a personal interest in your satisfaction.

Any parts replaced during the warranty repairs become the property of Suzuki and will not be returned to you.

## SPECIAL ASSISTANCE

If you should experience a problem or have a service or warranty concern, which your Authorized Suzuki dealer cannot resolve, please follow these procedures in the following sequence for the fastest possible response.

1.  Bring your problem or concern to the attention of the dealership's service management and allow the dealer every opportunity to resolve your concern.

5

2. Fully explain your concern to the dealership's Service Manager, Owner or General Manager. Ask them for their full cooperation and assistance in resolving your concerns. These individuals are vitally concerned with your satisfaction and future business. For this reason they are in the best position to assist you.

   If after following the steps outlined above further assistance is still required please write to the address listed below. Be certain to provide us with the following information: Model, engine number, hours used, boat brand, model, length and the dates that the events occurred. Include the name of the dealership, the individuals you have spoken to at the dealership and the dealership address to confirm the exact location. Please also include all relevant service receipts.

3. Suzuki Motor of America will contact your Authorized Suzuki Dealer concerning any inquiry made about warranty and service concerns. We will speak to the Owner, General Manager, Service Manager and Technicians to learn all of the relevant facts before making any decisions. This process will take place as quickly as possible, but some time must be allowed for a thorough investigation of all the pertinent facts.

While we urge you to write so as to provide a written record of your concern, you may also phone the Customer Service Department from 8:30 am to 5:00 P.M. Pacific time. The address and phone number are as follows:

> SUZUKI MOTOR OF AMERICA, INC.
> MARINE DIVISION
> Customer Service Department
> 3251 East Imperial Highway
> PO Box 1100
> Brea, California 92822-1100
> Phone: (714) 572-1490

SUZUKI MAKES NO PROMISES OR WARRANTIES OTHER THAN THOSE PROMISES MADE IN THIS LIMITED WARRANTY.

ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE SHALL BE LIMITED TO THE DURATION OF THIS WRITTEN WARRANTY.

SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU.

THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU MAY ALSO HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.

SUZUKI DOES NOT AUTHORIZE ANY PERSON TO CREATE FOR IT ANY OTHER WARRANTY, OBLIGATION, OR LIABILITY IN CONNECTION WITH THIS OUTBOARD MOTOR.

6

**EXHIBIT "C"**



Toll Free Nationwide
1-888-565-3666
www.CarLemon.COM

**Weisberg**
Consumer Law Group, P.A.

Corporate Office:
5846 S. Flamingo Road, #290
Cooper City, FL 33330
954-212-2184 · 866-577-0963 Facsimile

The Law Office of Paul Guibao*
Paul K. Guibao **
1448 Madison Avenue
Memphis, TN 38104
PGuibao@AFCLaw.com
Extension 415

January 29, 2019

Recreation Unlimited, LLC
Attn: Legal Department
111 Matthews Drive
Americus, GA 31709

|  |  |
|---|---|
| Re: | <u>Susan Tubbs v. Recreation Unlimited, LLC</u> |
| Our Client: | Susan Tubbs |
| Year/Make/Model: | 2018 Key Largo 236WI 102IN 23FT; 2018 Suzuki DF225TX; 2018 Warlock 230G |
| Serial Numbers: | REC24597H718; 22503F-810313; 1Z9R230G4JS076094 |
| Our File Number: | V190024TN01 |

Dear Sir/Madam:

Please be advised that this office represents the above-named individual regarding claims against your company pursuant to the Federal Magnuson-Moss Warranty Act, the State Lemon Law and/or the Uniform Commercial Code with regard to the above-listed vessel.

Having been formally notified of our representation, we respectfully demand you not contact our client for any reason. Instead, please direct all future contact and correspondence to this office, and further, please consider this letter express and unequivocal revocation of any permission our client may have provided you to call them. We reserve the right to seek injunctive relief against you should you fail to honor these directives.

Enclosed please find the sales and repair records in our client's possession. As these records show, our client paid an extraordinary sum of money for a vessel riddled with numerous non-conformities that cause a substantial impairment of the use, value and/or safety of the vessel. The primary non-conformities include but are not limited to:

1.      Defective motor;

*Co-Counsel with The Weisberg Consumer Law Group, PA***
** admitted to practice in Tennessee
*** Alex Weisberg, Managing Partner, admitted to practice in Florida & Illinois

2.     Defective propeller;

3.     Defective hull;

4.     Defective brake line;

5.     Defective GPS;

6.     Defective fuel tank;

7.     Defective Bimini canvas;

8.     Defective seats;

9.     Defective gel coat; and

10.    Any additional complaints actually made, whether contained on your company's invoices or otherwise.

These non-conformities constitute violations of both Federal and State law, as do the inordinate amount of unsuccessful repair attempts to cure the same. Specifically, when you chose to bind our client to a written warranty limiting all remedies to repair or replacement of defective parts, you undertook the legal obligation to perform effective repairs within a reasonable amount of time. The inordinate amount of incompetent repairs within the applicable warranty period shows you failed to satisfy this obligation. Under basic principles of good faith, this means your limited remedy failed of its essential purpose. This failure caused harm for which our client intends to seek redress.

To avoid the need for litigation, we respectfully demand that you take this vessel back, return all funds paid towards the vessel, cancel all applicable contracts, and provide compensation for the damages sustained to date, including our client's attorneys' fees pursuant to the fee-shifting provisions of the Magnuson-Moss Warranty Act and/or Lemon Law. In exchange for meeting this demand, our client will waive all loss of use and aggravation and inconvenience damages sustained to date.

This letter also constitutes notice under U.C.C. § 2-711(3) of our client's security interest in the vessel for return of the total amount above, plus expenses in handling and inspecting the vessel. Until you pay this amount, our client has the right to hold the vessel and use it to the extent necessary to preserve it, to protect its security interest, and to minimize your damages. In addition, although our client requires return of the monies identified above before substitute goods can be acquired, our client reserves the right to mitigate all parties' damages by cover and reserves the right to claim such damages here. In addition, any attempt by you or your agents to repossess the vessel will be wrongful and will subject you to liability for conversion and for wrongful repossession under U.C.C. §§ 9-503 and 9-507 as well as other applicable Consumer Fraud remedies. If the seller (or, if applicable the assignee, or any creditor subject to the FTC Holder Rule) has filed a financing statement covering the goods, I demand, pursuant to U.C.C § 9-404,

that you file a termination statement within ten days to terminate your security interest and forward a copy to this office. Since our client has revoked acceptance, there is no outstanding secured obligation. If you do not file a termination statement within ten days and cooperate in removing the lien, you will be liable under U.C.C. § 9-404(1) for any loss caused our client by your failure. Please also consider this letter prior direct written notification of the defects within our client's vessel and of our client's intent to pursue a claim pursuant to the State Lemon Law. If and only if you have "final opportunity rights" under said statute, and wish to exercise said rights, you are hereby directed to contact this office within fourteen (14) days.

In conclusion, we urge you to realize that a quick resolution of this matter will save all parties a great deal of time, money and effort. To this end, although we believe the above demands are reasonable, our client remains open-minded to a diminution in value settlement, or any other suggestions for an equitable resolution you may have. I thus encourage you to contact this office at your earliest convenience with an offer for resolution. Should you fail to do so in a timely manner, we will assume you do not seek amicable resolution and will file a claim in a court of law seeking all actual and exemplary damages available.

Best regards,

Paul K. Guibao
Attorney at Law

PKG/js
Enc.



Toll Free Nationwide
1-888-565-3666
www.CarLemon.COM

**Weisberg**
Consumer Law Group, P.A.

Corporate Office:
5846 S. Flamingo Road, #290
Cooper City, Fl. 33330
954-212-2184 ; 866-577-0963 Facsimile

The Law Office of Paul Guibao*
Paul K. Guibao **
1448 Madison Avenue
Memphis, TN 38104
PGuibao@AFCLaw.com
Extension 415

April 8, 2019

Suzuki Motor of America, Inc.
Attn: Legal Department
3251 E. Imperial Highway
Brea, CA 92821

Re: <u>Susan Tubbs v. Recreation Unlimited, LLC</u>
Our Client: Susan Tubbs
Year/Make/Model: 2018 Key Largo 236WI; 2018 Suzuki DF225TX;
Serial Numbers: REC24597H718; 22503F-810313; 1Z9R230G4JS076094
Our File Number: V190024TN01

Dear Sir/Madam:

Please be advised that this office represents the above-named individual regarding claims against your company pursuant to the Federal Magnuson-Moss Warranty Act, the State Lemon Law and/or the Uniform Commercial Code with regard to the above-listed vessel and motor.

Having been formally notified of our representation, we respectfully demand you not contact our client for any reason. Instead, please direct all future contact and correspondence to this office, and further, please consider this letter express and unequivocal revocation of any permission our client may have provided you to call them. We reserve the right to seek injunctive relief against you should you fail to honor these directives.

Enclosed please find the sales and repair records in our client's possession. As these records show, our client paid an extraordinary sum of money for a vessel riddled with numerous non-conformities that cause a substantial impairment of the use, value and/or safety of the vessel. The primary non-conformities include but are not limited to:

1.      Defective motor;

*Co-Counsel with The Weisberg Consumer Law Group, PA***
** admitted to practice in Tennessee
*** Alex Weisberg, Managing Partner, admitted to practice in Florida & Illinois

2. Defective propeller;

3. Defective hull;

4. Defective brake line;

5. Defective GPS;

6. Defective fuel tank;

7. Defective Bimini canvas;

8. Defective seats;

9. Defective gel coat; and

10. Any additional complaints actually made, whether contained on your company's invoices or otherwise.

These non-conformities constitute violations of both Federal and State law, as do the inordinate amount of unsuccessful repair attempts to cure the same. Specifically, when you chose to bind our client to a written warranty limiting all remedies to repair or replacement of defective parts, you undertook the legal obligation to perform effective repairs within a reasonable amount of time. The inordinate amount of incompetent repairs within the applicable warranty period shows you failed to satisfy this obligation. Under basic principles of good faith, this means your limited remedy failed of its essential purpose. This failure caused harm for which our client intends to seek redress.

To avoid the need for litigation, we respectfully demand that you replace the motor in our client's boat and provide compensation for the damages sustained to date, including our client's attorneys' fees pursuant to the fee-shifting provisions of the Magnuson-Moss Warranty Act and/or Lemon Law. In exchange for meeting this demand, our client will waive all loss of use and aggravation and inconvenience damages sustained to date.

This letter also constitutes notice under U.C.C. § 2-711(3) of our client's security interest in the vessel for return of the total amount above, plus expenses in handling and inspecting the vessel. Until you pay this amount, our client has the right to hold the vessel and use it to the extent necessary to preserve it, to protect its security interest, and to minimize your damages. In addition, although our client requires return of the monies identified above before substitute goods can be acquired, our client reserves the right to mitigate all parties' damages by cover and reserves the right to claim such damages here. In addition, any attempt by you or your agents to repossess the vessel will be wrongful and will subject you to liability for conversion and for wrongful repossession under U.C.C. §§ 9-503 and 9-507 as well as other applicable Consumer Fraud remedies. If the seller (or, if applicable the assignee, or any creditor subject to the FTC Holder Rule) has filed a financing statement covering the goods, I demand, pursuant to U.C.C § 9-404, that you file a termination statement within ten days to terminate your security interest and forward a

copy to this office. Since our client has revoked acceptance, there is no outstanding secured obligation. If you do not file a termination statement within ten days and cooperate in removing the lien, you will be liable under U.C.C. § 9-404(1) for any loss caused our client by your failure. Please also consider this letter prior direct written notification of the defects within our client's vessel and of our client's intent to pursue a claim pursuant to the State Lemon Law. If and only if you have "final opportunity rights" under said statute, and wish to exercise said rights, you are hereby directed to contact this office within fourteen (14) days.

In conclusion, we urge you to realize that a quick resolution of this matter will save all parties a great deal of time, money and effort. To this end, although we believe the above demands are reasonable, our client remains open-minded to a diminution in value settlement, or any other suggestions for an equitable resolution you may have. I thus encourage you to contact this office at your earliest convenience with an offer for resolution. Should you fail to do so in a timely manner, we will assume you do not seek amicable resolution and will file a claim in a court of law seeking all actual and exemplary damages available.

Best regards,

Paul K. Guibao
Attorney at Law

PKG/js
Enc.